















AXC   6/25/01   9:00

3:01-CR-01579   USA V. CUELLAR

*9*

*CRMEMOPP.*

1  PATRICK K. O'TOOLE
   United States Attorney
2  SCOTT H. SAHAM
   Assistant U.S. Attorney
3  California State Bar No. 188355
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8800
5  Telephone:  (619) 557-7852

6

7  Attorneys for Plaintiff
   United States of America

8

9

10                  UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

   UNITED STATES OF AMERICA,      )   Criminal Case No. 01CR1579B
12                                 )
                       Plaintiff,  )   DATE: JULY 2, 2001
13                                 )   TIME: 2:00 p.m.
            v.                     )
14                                 )   GOVERNMENT'S MEMORANDUM IN
   AIDE CUELLAR,                   )   OPPOSITION TO DEFENDANT'S
15                                 )   MOTIONS TO:
                                   )   (1) DISMISS INDICTMENT
16                     Defendant.  )   (2) COMPEL DISCOVERY
   _____)   (3) SUPPRESS EVIDENCE
17

18
           COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through
19
   its counsel, PATRICK K. O'TOOLE, United States Attorney, and Scott H.
20
   Saham, Assistant United States Attorney, and hereby files the attached
21
   memorandum of facts and law in opposition to Defendant's Motions.
22

23

24

25

26

27

28

I

## STATEMENT OF THE FACTS

On May 7, 2001 Sandra Monica Rocha ("Rocha") and Aide Cuellar ("Defendant") entered the United States at the San Ysidro POE. Rocha was driving a 1989 Jeep Cherokee and Defendant was in the passenger seat. The individuals were asked the purpose of their trip to Mexico and they stated that they were returning from dropping off relatives at the Tijuana air port. According to the registration the vehicle had been purchased on May 3, 2001. The vehicle was referred to secondary and a Narcotics Detector Dog alerted to it. 28 kilograms of marijuana were found inside the back seats of the vehicle. Defendant was advised of her Miranda rights and waived them. Defendant stated that she was going to be paid $2000 to drive the marijuana into the United States. Rocha was Mirandized and denied knowledge of the marijuana. Rocha was later released.

II

## DISCUSSION

A.   DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED

Defendant asks this Court to dismiss the indictment on the ground that the drug statutes under which he was charged are unconstitutional. Defendant's argument is without merit, and his motion to dismiss should therefore be denied.

Defendant claims the statute is unconstitutional based on the Supreme Court's pronouncement in several recent cases that facts, other than prior convictions, that produce an increase in the maximum sentence to which a defendant is subject must be found by a jury beyond a reasonable doubt. See, e.g., Apprendi v. New Jersey, 120 S.Ct. 2348, 2000 WL 807189 (U.S. June 26, 2000); Castillo v. United

2                                                                      01CR1579B

States; 120 S.Ct. 2090 (2000); <u>Jones v. United States</u>, 119 S.Ct. 1215

(1999).   Nothing in those cases, however, mandates defendant's

conclusion that the drug statutes are unconstitutional as written

      As an initial matter, whatever one may conclude about the

constitutionality of those provisions of the drug statutes that

enhance a defendant's sentence based on the type and quantity of

controlled substance, in the instant case Defendant is alleged to have

imported (and possessed with the intent to distribute) approximately

61.6 pounds of marihuana.   Given the allegations of the indictment,

defendant, if convicted, would be subject to punishment under 21

U.S.C. § 841(b)(1)(D), which prescribes a statutory maximum penalty

of five years of imprisonment.   That is the lowest statutory penalty

provided for in the statute for possession of marihuana with the

intent to distribute.[1]   Defendant thus is not subject to having his

maximum statutory sentence enhanced, based on the allegations of the

indictment.   The rule announced in Apprendi, that "[O]ther than the

fact of a prior conviction, any fact that increases the penalty for

a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt," <u>Apprendi v. New Jersey</u>,

120 S.Ct. 2348, 2000 WL 807189 *8 (U.S. June 26, 2000), thus has no

---

[1]      The Government believes that under the plain language of the
drug statutes, the "base" statutory maximum penalty is twenty years.
<u>See</u> 21 U.S.C. §§ 841(b)(1)(C) and 960(b)(1)(C).   Thus the rule of
<u>Apprendi</u>, prohibiting <u>increases</u> in the statutory maximum, absent a
jury finding beyond a reasonable doubt, applies in the drug context
only to cases involving mandatory minimum quantities of drugs.   <u>See</u>
21 U.S.C. §§ 841(b)(1)(A) and (B), 960(b)(1)(A) and (B).   The Court
need not decide this question on the facts of this case, however,
because Defendant would be subject to the lowest possible sentence
under the statute in any event.   See 21 U.S.C. §§ 841(b)(1)(D) and
960(b)(1)(D).

01CR1579B

1  application to defendant, because the penalty to which he would be

2  subject upon conviction would not be increased in any event.

3       Even if that were not the case, however, defendant's motion still

4  should be denied.  The drug statutes do not <u>require</u> that the type and

5  quantity of the controlled substance, the factors that have the

6  potential to increase a defendant's maximum penalty, be found by the

7  judge rather than the jury.  Instead the statutes are silent on that

8  point and are thus capable of being interpreted in such a way as to

9  comply with the constitutional mandate as announced in <u>Apprendi</u>,

10  <u>Castillo</u>, and <u>Jones</u>.  And it is, of course, a cardinal principle of

11  statutory construction that "[W]here a statute is susceptible of two

12  constructions, by one of which grave and doubtful constitutional

13  questions arise and by the other of which such questions are avoided,

14  [the court's] duty is to adopt the latter."  <u>United States ex rel.</u>

15  <u>Attorney General v. Delaware & Hudson Co.</u>, 213 U.S. 366, 408 (1909).

16  Because the drug statutes can reasonably be read to require a jury

17  finding of any fact that would increase a defendant's maximum

18  statutory penalty, they are not facially unconstitutional.

19       This was the conclusion of Judge Jones in deciding a virtually

20  identical motion.  As he stated,

21      [T]here is nothing facially defective about §§ 841 or 960.
    The New Jersey statutory scheme explicitly allowed for a

22      judge to make the finding of animus which triggered the
    sentencing enhancements.  However here, § 841 and § 960 are

23      silent as to the issue of the identity of the fact finder
    and the required burden of proof.  Even if drug quantities

24      are elements of the offense that are required to be charged
    in the indictment and decided by a jury beyond a reasonable

25      doubt, it is possible to construe these sections to comply
    with this requirement.

26

27  <u>United States v. Lomeli-Medrano</u>, no. 00-1290-J (S.D. Cal. July 20,

28  2000), slip opinion at 9.

01CR1579B

1    In sum, the cases cited by defendant have no application here,
2 because defendant's sentence is not subject to any increase above an
3 otherwise-applicable statutory maximum.   Even if those cases were
4 applicable, the drug statutes do not on their face violate the rule
5 that a jury must find any fact that would produce an increase in a
6 defendant's statutory maximum sentence.   Those statutes are thus
7 constitutional, and defendant's motion to dismiss the indictment
8 should be denied.

9 //

10 //

11       B.   THE GOVERNMENT NEED ONLY PROVE THAT THE DEFENDANT
              "KNOWINGLY OR INTENTIONALLY" IMPORTED OR POSSESSED
12            SOME QUANTITY OF A CONTROLLED SUBSTANCE.

13    Defendant argues that, even if the drug statute itself can be
14 construed in such a way as to survive constitutional scrutiny in the
15 face of Apprendi (a proposition defendant hotly disputes), the statute
16 must then be read to impose a requirement that a defendant know the
17 type and amount of controlled substance that he imported or possessed
18 in order to be found guilty under the "enhanced" offenses under 21
19 U.S.C. §§ 841(b)(1)(A) and (B) and 21 U.S.C. §§ 960(b)(1) and (2).
20 Defendant reasons that because the type and quantity of the controlled
21 substance are now elements of these "enhanced" offenses, there must
22 be a showing that a defendant acted "knowingly or intentionally" with
23 respect to those elements.

24    Defendant's argument is without merit.   Although the drug
25 statutes do impose a scienter requirement, i.e., that the defendant
26 "knowingly or intentionally" imported or possessed with the intent to
27 distribute a controlled substance, that requirement is satisfied so
28 long as the defendant knew that he was importing or possessing some

5                                    01CR1579B

quantity of some controlled substance.  Neither the language of the statute nor any general principle of criminal law requires that a defendant have knowledge of the precise nature or quantity of the controlled substance.

As an initial matter, it should be noted that defendant's assertion that the Government must prove he knew the particular controlled substance involved and its weight is flatly contrary to current Ninth Circuit law. As our court of appeals has unequivocally stated,

> [A] defendant charged with importing and possessing a controlled substance need not know "the exact nature of the substance with which he was dealing." Instead, a defendant can be convicted under § 841 and § 960 if he believes he has _some_ controlled substance in his possession.

United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir. 1989) (citations omitted) (emphasis in original). Accord: United States v. Salazar, 5 F.3d 445 (9th Cir. 1993) (defendant responsible for "volume of drug actually imported, whether or not defendant knows either the volume or nature of the substance - if he knows only that he is importing a controlled substance"); United States v. Lopez-Martinez, 725 F.2d 471 (9th Cir. 1984). There is nothing in Apprendi, or in any general principle of criminal law, that requires a different rule.

The Supreme Court has recently reminded us that, absent an unambiguous legislative direction to the contrary, a court should "read into a statute only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" Carter v. United States, 120 S.Ct. 2159, 2169 (2000) (quoting United States v. X-Citement Video, 513 U.S. 64, 72 (1994)).  In the instant case the defendant's knowledge that he was importing (or possessing) some amount of some controlled substance is sufficient to distinguish his

behavior from "otherwise innocent conduct," thus ensuring that only those who act with criminal intent will be punished under the statute.

Many statutes impose criminal liability based on a defendant's knowledge that his conduct was wrongful, even though the defendant was not aware of the full extent of his wrongful conduct.  Courts have routinely approved the imposition of enhanced penalties on defendants in such circumstances.  As one appellate court has stated,

> [S]tatutes that enhance penalties for previously defined offenses when certain aggravating circumstances are present, whether or not the defendant is aware of the circumstances, are neither new nor uncommon.  Examples include the "schoolyard statute," 21 U.S.C. § 860, which enhances the penalty for distribution of drugs when the sale occurs within 1000 feet of a school, regardless of the defendant's knowledge of the proximity, see United States v. Holland, 810 F.2d 1215, 1222-24 (D.C.Cir.) (upholding same), cert. denied, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); United States v. Falu, 776 F.2d 46, 50 (2d Cir.1985) (same);  21 U.S.C. § 859, which enhances the penalty for the distribution of drugs when the recipient is a minor, regardless of the defendant's knowledge of his age, see United States v. Pruitt, 763 F.2d 1256, 1261-62 (11th Cir.1985) (upholding same), cert. denied, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986); 18 U.S.C. § 2423, which enhances the penalty for transportation of an individual for the purpose of prostitution when the victim is a minor, even if the defendant is unaware of the victim's age, see United States v. Hamilton, 456 F.2d 171 (3d Cir.) (upholding same), cert. denied, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972);  and  21 U.S.C. § 841(b), which prescribes elevated penalties for the possession with intent to distribute cocaine in crack form, regardless of whether the defendant knew the amount or nature of the controlled substance, see United States v. Collado-Gomez, 834 F.2d 280, 281 (2d Cir.1987) (upholding same), cert. denied, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988).

United States v. Schnell, 982 F.2d 216, 221 (7th Cir. 1992).

A recent case from our court of appeals is illustrative.  United States v. Flores-Garcia, 198 F.3d 1119 (9th Cir. 2000), involved a prosecution under 8 U.S.C. § 1327.  That statute makes it a crime to "knowingly aid[] or assist[] any alien inadmissible under section

01CR1579B

1  212(a)(2) [of the Immigration and Nationality Act] (insofar as an

2  alien inadmissible under such section has been convicted of an

3  aggravated felony) . . . to enter the United States."   The issue

4  presented in Flores-Garcia was whether the Government had to prove

5  that the defendant knew of the alien's aggravated felony conviction.

6  The Ninth Circuit held that such knowledge was not required, that a

7  conviction could be had if the Government proved that the defendant

8  had knowingly aided and abetted the entry of the alien, that the

9  defendant knew the alien was inadmissible, and that the alien was

10 inadmissible because of an aggravated felony conviction, whether or

11 not the fact of the aggravated felony conviction was known to the

12 defendant.    198 F.3d at 1122-1123.   As the court explained, the

13 statute was constitutional so long as the statute required proof that

14 the defendant was aware that his conduct was illegal.

15    Criminal law presumes that the government must prove that
16    the defendant possessed some mental state for each
      statutory circumstance that would make criminal "otherwise
      innocent conduct," even if this construction is not the
17    "most natural grammatical reading of the statutory
      language." United States v. X-Citement Video, Inc., 513
18    U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).
      Provided the defendant recognizes he is doing something
19    culpable, however, he need not be aware of the particular
      circumstances that result in greater punishment.
20
21 Id. at 1121-1122.[2/]

22    [2/]    The Court of Appeals for the Second Circuit reached the same
23    conclusion in United States v. Figueroa, 165 F.3d 111 (2d Cir. 1998).
      After reviewing numerous Supreme Court decisions on mens rea, that
24    court summarized the rule to be followed in determining a statute's
      mens rea requirement as follows:

25    These Supreme Court cases stand for the proposition that
26    absent congressional intent to the contrary, statutes
      defining public welfare offenses should be read to require
27    only so much knowledge as is necessary to provide
      defendants with reasonable notification that their actions
28    are subject to strict regulation.  In such cases, Congress
      is presumed to have placed the burden on defendants who
                                          (continued...)

8                                                          01CR1579B

1   Another example of the principle that a defendant "need not be
2  aware of the particular circumstances that result in greater
3  punishment" is <u>United States v. Pitts</u>, 908 F.2d 458 (9th Cir. 1990).
4  There the Ninth Circuit upheld former 21 U.S.C. § 845a(a), now
5  codified at 21 U.S.C. § 860(a), which prohibited distribution of
6  narcotics within 1,000 feet of a school.  The defendant in <u>Pitts</u>
7  claimed the statute violated the due process clause because it failed
8  to require that the defendant know he was within 1,000 feet of a
9  school.  The court had no difficulty rejecting the due process claim,
10 quoting approvingly the Second Circuit's decision in a similar case:

11      Anyone who violates section 845a(a) knows that distribution
        of narcotics is illegal, although the violator may not know
12      that the distribution occurred within 1,000 feet of a
        school.  In this respect, the schoolyard statute resembles
13      other federal criminal laws, which provide enhanced
        penalties or allow conviction for obviously antisocial
14      conduct upon proof of a fact of which the defendant need
        not be aware.
15
   <u>Pitts</u>, 908 F.2d at 461 (quoting <u>United States v. Falu,</u> 776 F.2d 46,
16 50 (2d Cir.1985)).

17  Other cases involving the drug laws reaffirm the conclusion that
18 guilt is not precluded because a defendant was not aware of all the
19 circumstances that expose him to increased punishment.  In <u>United
20 States v. Valencia-Roldan</u>, 893 F.2d 1080 (9th Cir. 1990), the Ninth
21 Circuit held that a conviction under 21 U.S.C. § 845b(a) (subsequently
22 recodified as 21 U.S.C. § 861(a)), making it a crime to knowingly and
23 intentionally

24      employ, hire, use, persuade, induce, entice, or coerce, a
        person under eighteen years of age to assist in avoiding
25

26      2/ (...continued)
27      have received such notice to "ascertain at [their] peril
        whether [their conduct] comes within the inhibition of the
28      statute."

   <u>Id.</u> at 116-117.

                                    9                        01CR1579B

1    detection or apprehension for any [specified drug offense]
      by any Federal, State, or local law enforcement official,

2    did not require that the Government prove the defendant knew that he

3    was being assisted by a person under eighteen years of age. <u>Id.</u> at

4    1083.[3/]  Similarly, in <u>United States v. Pruitt</u>, 763 F.2d 1256 (11th

5    Cir. 1985), the Court of Appeals for the Eleventh Circuit ruled that

6    a conviction for distributing drugs to a minor did not require proof

7    that the defendant knew the distributee's age. <u>Id.</u> at 1261-1262.

8        The principle that a defendant who knowingly commits a wrong is

9    responsible for his actual conduct, regardless of his knowledge of the

10   full scope of that conduct, is not limited to drug cases. <u>See</u>, <u>e.g.</u>,

11   <u>United States v. Feola</u>, 420 U.S. 671, 678-679, 684 (1975) (assault on

12   federal officer statute does not require proof that defendant knew of

13   victim's status);  <u>United States v. International Minerals & Chemical</u>

14   <u>Corp.</u>, 402 U.S. 558, 565 (1971) (defendant transporting sulfuric acid

15   and hydrofluosilicic acid need not be shown to have known that the

16   items were subject to regulation); <u>United States v. Freed</u>, 401 U.S.

17   601, 609 (1971) (defendant prosecuted for possession of unregistered

18   hand grenades need not know that the hand grenades were unregistered);

19   <u>Ailsworth v. United States</u>, 448 F.2d 439, 442 (9th Cir. 1971) (in

20   theft prosecution defendant need not know that stolen property was

21   valued at greater than $100 ); <u>United States v. Howey</u>, 427 F.2d 1017,

22   1018 (9th Cir. 1970) (knowledge that the property stolen belongs to

23   the United States is not an element of 18 U.S.C. § 641); <u>United States</u>

24   <u>v. Hamilton</u>, 456 F.2d 171, 172-173 (3d Cir. 1972) (prosecution under

25

26       [3/]    Other circuits have reached the same conclusion. <u>See United</u>
27   <u>States v. Frazier</u>, 213 F.3d 409 (7th Cir. 2000); <u>United States v.</u>
     <u>Cook</u>, 76 F.3d 596, 599-602 (4th Cir. 1996); <u>United States v. Chin</u>, 981
28   F.2d 1275, 1279-1281 (D.C. Cir. 1992); <u>United States v. Williams</u>, 922
     F.2d 737, 738-739 (11th Cir. 1991); <u>United States v. Carter</u>, 854 F.2d
     1102, 1108-1109 (8th Cir. 1988).

White Slave Traffic Act does not require proof that defendant knew person transported was a minor).

As these cases demonstrate, particularly in the area of regulatory or public welfare statutes, such as the drug laws, courts should require "only that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" Carter v. United States, 120 S.Ct. 2159, 2169 (2000) (quoting United States v. X-Citement Video, 513 U.S. 64, 72 (1994)). That separation of wrongful from innocent conduct is accomplished by the current requirement that a defendant know that he is importing or possessing some amount of some controlled substance. To require proof that the defendant knew exactly which illegal substance he was importing and in precisely what amount would be "to invite blindness by drug dealers." United States v. Chin, 981 F.2d at 1280. As Justice (then-Judge) Ginsburg aptly stated in Chin, the public welfare purpose behind the drug laws suggests that the statutes "impose on the drug dealer the burden of inquiry and the risk of misjudgment." Id.

The statutes at issue here do not explicitly state that a defendant's knowledge of the type and quantity of a controlled substance are elements of the offenses described therein, and our court of appeals has ruled that such knowledge is not required to sustain a conviction. General principles of criminal law in the area of public welfare statutes counsel that a scienter requirement should be limited to that mens rea necessary to distinguish wrongful conduct from innocent conduct. Nothing in Apprendi commands a different result. Finally, the scienter requirement advocated by defendant would allow drug dealers to avoid criminal responsibility by the simple expedient of limiting their employees knowledge of the details

of their conduct, thereby thwarting Congress's purpose in specifying increased penalties for possession of large quantities of dangerous drugs. The Government therefore suggests that <u>United States v. Lopez-Martinez</u>, 725 F.2d 471 (9th Cir. 1984); <u>United States v. Ramirez-Ramirez</u>, 875 F.2d 772, 774 (9th Cir. 1989); and <u>United States v. Salazar</u>, 5 F.3d 445 (9th Cir. 1993) remain good law and that to sustain a conviction under the drug laws it need prove only that a defendant knew he was importing or possessing some amount of some controlled substance.

//

//

C.   <u>List Of Witnesses</u>

The Government will provide the defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. <u>See</u>, <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Cutler</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible government witnesses. <u>See</u>, <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1997), <u>cert. denied</u>, 419 U.S. 834 (1974).

D.   <u>Reports of Scientific Tests and Expert Disclosure</u>

The Government will comply with Rule 16(a)(1)(D) and (E) of the Federal Rules of Criminal Procedure and will allow defense counsel to inspect and copy or photograph, at a mutually convenient time, any results or reports of any scientific tests or experiments to which the defendant may be entitled under the specific provisions of these

01CR1579B

1 | rules.   Due to the early stage of this proceeding, all such reports
2 | may not have as of yet been generated.   The government will further
3 | make the required expert witness disclosures prior to the trial of
4 | this action, if the government intends to rely on any expert testimony
5 | at trial.

6 |      E.   Defendant's Prior Record

7 |      The government will seek to introduce any prior similar bad acts,
8 | pursuant to Federal Rules of Evidence 404(b) and 609.   The government
9 | will provide further details of any such acts at the time the
10 | government's trial memorandum is filed.

11 |      F.   Handwritten Notes of Agents

12 |      The Government objects to defendant's request for production of
13 | any handwritten notes of agents that may exist.   Prior production of
14 | an agent's handwritten notes is not necessary because such notes are
15 | not statements within the meaning of the Jencks act because they do
16 | not comprise a substantially verbatim narrative of the defendant's
17 | assertions nor have they been approved or adopted by the defendant.
18 | United States v. Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980; see
19 | also United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981),
20 | cert. denied, 456 U.S. 949 (1982); United States v. Rewald, 889 F.2d
21 | 836 (9th Cir 1989).   The Government will, however, request its agents
22 | to preserve their notes in the event materiality is shown.

23 |      G.   Statements Made By The Defendant

24 |      Defendant requests disclosure of any statements made by him
25 | regardless of to whom made.   The Government has disclosed the
26 | substance of defendant's oral statements made in response to questions
27 | by Government agents.   The Government, however, is not required to
28 | deliver oral statements, if any, made by a defendant to persons who

01CR1579B

1  are not Government agents.  Nor is the Government required to produce

2  oral statements, if any, voluntarily made by a defendant to Government

3  agents.  <u>United States v. Stoll</u>, 726 F.2d 584 (9th Cir. 1984); <u>United</u>

4  <u>States v. Hoffman</u>, 794 F.2d 1429, 1431 (9th Cir. 1986).  The

5  Government recognizes its obligation under Federal Rule of Criminal

6  Procedure 16(a)(1)(A) to disclose "that portion of any written records

7  containing the substance of any relevant oral statement made by the

8  defendant whether before or after arrest in response to interrogation

9  by any person then known to the defendant to be a Government agent."

10  Defendant misstates Rule 16(a)(1)(A) by suggesting that this statute

11  now mandates disclosure of <u>all</u> defendant's statements.

12       H.   <u>Exculpatory Evidence</u>

13       The Government will comply with the requirements of <u>Brady v.</u>

14  <u>Maryland</u>, 373 U.S. 83 (1963) and disclose all evidence in its

15  possession, which may be material to the issue of defendant's guilt

16  or punishment.  A defendant, however, is not entitled to all evidence

17  which might conceivably affect the credibility of the Government's

18  case.  As the Ninth Circuit stated in <u>United States v. Gardner</u>, 611

19  F.2d 770 (9th Cir. 1908):

20            . . .[T]he prosecution does not have constitutional duty to
            disclose every bit of information that might affect the
21            jury's decision; it need only disclose information
            favorable to the defense that meets the appropriate
22            standard of materiality.

23  <u>Id.</u> at 774-75 (citations omitted).  <u>See also</u>, <u>United States v.</u>

24  <u>Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980)(<u>Brady</u> does not require

25  the Government to create exculpatory material that does not exist);

26  <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976)(<u>Brady</u> does

27  not create any pretrial discovery privileges not contained in the

28  Federal Rules of Criminal Procedure); <u>United States v. Bryan</u>, 868 F.2d

                                     14                          01CR1579B

1   1032, 1037 (9th Cir.), cert. denied, 110 S.Ct. 167 (1989)(statements

2   are not automatically exculpatory just because they are not

3   inculpatory).

4       I.   Prior Wrongful Conduct of Government Witnesses

5       The Government will comply with its obligations to disclose

6   impeachment evidence under Giglio v. United States, 405 U.S.

7   150(1972). The Government will also provide the criminal history and

8   prior material acts of misconduct, if any, of its trial witnesses as

9   mandated in Giglio. The Government also agrees to provide information

10  related to the bias, prejudice or other motivation of government trial

11  witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959). In

12  addition, the Government will disclose all impeachment material, if

13  any, when it files its trial memorandum, although it is not required

14  to produce such material until after its witnesses have testified at

15  trial or at a hearing. See, United States v. Bernard, 623 F.2d 551,

16  556 (9th Cir. 1979).

17      J.   Jencks Act Material

18      Production of this material is governed by 18 U.S.C. § 3500, and

19  need occur only after the witness has testified on direct examination.

20  United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994); United

21  States v. Kerr, 981 F.2d 1050 (9th Cir. 1992). Indeed, even material

22  believed to be exculpatory and therefore subject to disclosure under

23  the Brady doctrine, if contained in a witness statement subject to the

24  Jencks Act, need not be revealed until such time as the witness

25  statement is disclosed under the Act. See United States v. Bernard,

26  623 F.2d 551, 556 (9th Cir. 1979). Further, the Government reserves

27  the right to withhold the statements of any particular witnesses it

28  deems necessary until after they testify.

K.  Personnel Records of Government Officers Involved in the Arrest and Government Examination of Law Enforcement Personnel Files

Pursuant to <u>United States Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v. Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality." <u>United States v. Cadet</u>, 727 F.2d at 1467, 1468.

The Government will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material. The Government will request that counsel for the appropriate federal law enforcement agency conduct such review. <u>See</u> <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. May 13, 1996); <u>United States v. Jennings</u>, 960 F.3d 1488, 1492 (9th Cir. 1992). The Government is not required to review personnel files of state law enforcement witnesses, <u>United States Dominquez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

Furthermore, neither federal law nor Rule 16 requires the Government to produce citizen complaints and internal affair documents relating to the officers involved in the present case.

L.  Documents and Tangible Objects

The Government will comply with Fed. R. Crim. P. 16(a)(1)(C) by allowing defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence that is within the possession, custody or control of the Government, and which is material to the preparation of defendant's defense or is intended for use by the Government as evidence-in-chief at trial, or was obtained from or belongs to defendant.

01CR1579B

1   M.   Audiotapes

2       The Government objects to defendant's request for audiotapes.

3   Those tapes are not Jencks material.   United States v. Bobadilla-

4   Lopez, 954 F.2d 519 (9th Cir. 1992).   Defendant has failed to explain

5   how he is entitled to any such tapes under FRCP 16.

6   N.   Grand Jury Testimony

7       The Government objects to the extent defendant requests the

8   transcripts of grand jury testimony in connection with this case.

9   Such a request is improper because defendant has not met his burden

10  of showing a particularized need for such testimony so as to overcome

11  the secrecy of grand jury proceedings.   The United States Supreme

12  Court has stated there is "a long established policy that maintains

13  the secrecy of the grand jury proceedings in the federal courts."

14  United States v. Proctor & Gamble Co., 356 U.S. 677,

15  681(1958)(footnote omitted); Douglas Oil Company v. Petrol Stops

16  Northwest, 441 U.S. 211, 218(1997 )   The Supreme Court has also

17  consistently held that Federal Rule of Criminal Procedure

18  6(e)(3)(C)(i) requires a strong showing of particularized need before

19  grand jury materials are disclosed.   See United States v. Sells

20  Engineering, Inc., 436 U.S. 418(1983).   In the instant case, defendant

21  has made no showing of any particularized need but simply a broad

22  request for all grand jury information.   Consequently, defendant's

23  motion should be denied.   See United States v. Malquist, 791 F.2d

24  1399(9th Cir. 1986), cert.denied,479 U.S. 954(1986).

25  O.   THE GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY
        SHOULD BE GRANTED

26

27      Defendant has invoked Federal Rule of Criminal Procedure 16(a)

28  in his motion for discovery.   Further, the Government has voluntarily

    complied with and exceeded the requirements of Federal Rule of

                              17                    01CR1579B

Criminal Procedure 16(a).   Thus, Rule 16(b), pertinent portions of which are cited below, is applicable:

    (b)   Disclosure of the Evidence by the Defendant.

        (1)   Information Subject to Disclosure.

            (A)   Documents and Tangible Objects.

If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the Government, the defendant, on request of the Government, shall permit the Government to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence-in-chief at the trial.

If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the Government, the defendant, on request of the Government, shall permit the Government to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to his testimony.

Therefore, Rule 16(b) should presently be determined to be operable as to the defendant.

The Government, pursuant to Rule 16(b), hereby requests that the defendant permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, which are within the possession, custody or control of defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations or scientific tests or experiments made in connection with this case, which the defendant intends to introduce as evidence in his case-in-chief at trial.   The Government also requests that the

1    court make such orders as it deems necessary under Rule 16(d)(1) and

2    (2) to ensure that the Government receives the discovery to which it

3    is entitled.

4    //

5    /

6    P.   DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AS VIOLATIVE
         OF HER MIRANDA RIGHTS SHOULD BE DENIED

7        At an evidentiary hearing, the Government would demonstrate that

8    defendant's post-Miranda statements were admissible and that they were

9    not obtained in violation of his Fifth Amendment rights or the <u>Miranda</u>

10   decision.

11            1.   Defendant Waived Her Miranda Rights

12       The testimony would establish that the defendant was advised of

13   his <u>Miranda</u> rights following his arrest orally and thereafter waived

14   them.   Whether there has been an intelligent <u>Miranda</u> waiver by the

15   defendant depends upon the particular facts in the case, including the

16   background, experience, and conduct of the accused.   <u>Brewer v.</u>

17   <u>Williams</u>, 430 U.S. 387, 403 (1977).   See <u>also</u>, <u>United States v.</u>

18   <u>Rodriquez-Gastelum</u>, 569 F.2d 482, 483 (9th Cir. 1978).

19            2.   Defendant's Statements Were Voluntary

20       The Government would establish the voluntariness of defendant's

21   statements by a preponderance of the evidence.   <u>Lego v. Twomey</u>, 404

22   U.S. 477, 488-489 (1972). A statement will be found to be voluntary

23   if the totality of the surrounding circumstances indicates that it was

24   the product of free and rational choice.   <u>Columbe v. Connecticut</u>, 367

25   U.S. 568 (1961).   The voluntariness of a Fifth Amendment waiver

26   depends "on the absence of police overreaching, not on 'free choice'

27   in any broader sense of the word." <u>Colorado v. Connelly</u>, 367 U.S. 568

28   (1986).   In examining the totality of the circumstances to determine

1  whether the will of the defendant was overborne by coercive pressures,

2  the court is required to examine the personal characteristics of the

3  defendant together with the details of the interrogation. See

4  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

5     Here, the testimony would establish that defendant agreed to

6  answer questions without an attorney present.  The testimony would

7  also establish that defendant was not subjected to any form of

8  physical or mental threats or coercion, and the conduct of the

9  Government agents involved was entirely proper.  The defendant had his

10  Miranda rights explained to him and then agreed to waive those rights

11  and make a statement.  The Government's conduct was entirely proper.

12  Therefore, defendant's motion to suppress his statements should be

13  denied.

14          3.   Defendant Is Not Entitled To An Evidentiary
                 Hearing

15     Defendant's motion to suppress statements should be denied

16  without an evidentiary hearing.   An evidentiary hearing is not

17  required because defendant has failed to comply with the Local Rules.

18  Specifically, defendant's moving papers do not include any supporting

19  declarations.

20     Local Rule 47.1 (g) provides:

21     (1)  When Declarations Required

22     Criminal motions requiring a predicate factual finding
       shall be supported by declaration(s).   When a opposing
23     party contests a representation of fact contained in a
       moving declaration, the opposition shall likewise be
24     supported by a declaration which places that representation
       into dispute. When an opposing party does not contest such
25     a representation, but argues instead that additional facts
       bear on the court's inquiry, the opposing party shall
26     support its arguments with declaration(s) setting forth
       such additional facts.   The court need not grant an
27     evidentiary hearing where either party fails to properly
       support its motion or opposition. (emphasis added).
28

                              20                      01CR1579B

1  The Ninth Circuit has held that a district court has the power
2  to regulate its practice in criminal cases in the manner prescribed
3  by Local Rule 47.1. <u>United States v. Terry</u>, 11 F.3d 110, 113 (9th
4  Cir. 1993). The Ninth Circuit has also upheld a district court's
5  denial of a request for an evidentiary hearing where a defendant
6  failed to comply with a local rule requiring the submission of
7  supporting declarations. <u>United States v. Wardlow</u>, 951 F.2d 1115,
8  1116 (9th Cir. 1991) <u>cert. denied</u>,113 S.Ct. 469 (1992).

9  Defendant's motion to suppress evidence is nothing more than a
10 boiler plate discussion of the law filled with factual and legal
11 conclusions. Furthermore, defendant has failed to present any support
12 for her contention that the post-<u>Miranda</u> consents were involuntary.
13 Defendant's contentions that these statements were involuntarily made
14 is made without the benefit of any declaration by the defendant to
15 this effect and, as discussed above, should be denied without an
16 evidentiary hearing.

17

18         O.   DEFENDANT'S MOTION TO DISMISS BECAUSE THE GRAND JURY
                WAS NOT PROPERLY INSTRUCTED SHOULD BE DENIED
19
20     Defendant urges the court to dismiss the indictment based
21 on the Government's failure to inform the grand jury that they have
   the power to return a "no bill" even when there is sufficient probable
22
   cause to charge the Defendant with a crime. Defendant essentially
23
   states that the absence of a grand jury nullification instruction is
24
   grounds for dismissal of the indictment. Defendant is wrong.
25
       While jury nullification (and grand jury nullification)
26
   probably does occur, it is not to be encouraged through the use of
27
   jury instructions. See <u>United States v. Powell</u>, 955 F.2d 1206, 1213
28
   (9th Cir. 1991); <u>United States v. Dougherty</u>, 473 F.2d 1113, 1133 (D.C.

Cir. 1972) (while jury nullification is a fact of our jurisprudential process, anarchy would result from instructing the jury that it may ignore the requirements of the law).   In the Ninth Circuit, the Defendant is not entitled to a jury nullification instruction at trial.   United States v. Simpson, 460 F.2d 515, 519 (9th Cir. 1972).

The law that applies to jury nullification instructions can and should apply to grand jury nullification instructions.   Just as the court has no obligation to instruct juries that they have the power to acquit a Defendant at trial regardless of the evidence of his guilt, the Government has no obligation to inform the grand jury that they have the power to return a "no bill" even where there is probable cause to return an indictment.   Defendant does not cite any case requiring the Government to provide the grand jury with a nullification instruction, and no such case exists.   Acceptance of Defendant's proposal to give a grand jury nullification instruction so that "individual conduct [ ] collides with the rules adopted by Governmental processes would, of course, amount to rejection of law as the controlling principle of society." United States v. Simpson, 460 F.2d 515, 519 (9th Cir. 1972) (further citations omitted). Accordingly, Defendant's motion to dismiss the indictment based on the Government's failure to give a grand jury nullification instruction should be denied.

01CR1579B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III

### CONCLUSION

For the above stated reasons Defendant's Motions should be denied.

DATED: June 21, 2001

Respectfully submitted,

PATRICK K. O'TOOLE
United States Attorney

SCOTT H. SAHAM
Assistant U.S. Attorney

23

01CR1579B

1        UNITED STATES DISTRICT COURT

2        SOUTHERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,      )      Crim. Case No. 01CR1579-B
                                    )
4                     Plaintiff,    )
                                    )
5          v.                       )      CERTIFICATE OF SERVICE
                                    )      BY MAIL
6    AIDE CUELLAR,                   )
                                    )
7                     Defendant.    )
     _____)

8

9    STATE OF CALIFORNIA      )
                             )    ss.
10   COUNTY OF SAN DIEGO      )

11       IT IS HEREBY CERTIFIED THAT:

12       I, Paula R. Steward, am a citizen of the United States over the

13   age of eighteen years and a resident of San Diego County, San Diego,

14   CA; my business address is 880 Front Street, San Diego, California;

15   I am not a party to the above-entitled action; and,

16       On this date I deposited in the United States mail at San Diego,

17   California, in the above-entitled action, in an envelope bearing the

18   requisite postage; **Government's Memorandum in Opposition to**

19   **Defendant's Motions** addressed to

20   **GERALD SINGLETON, ESQ.**
     **Federal Defenders of San Diego, Inc.**
21   **225 Broadway, Suite 900**
     **San Diego, CA 92101-5008**
22
     the last known address at which place there is delivery service of
23
     mail from the United States Postal Service.
24
         I declare under penalty of perjury that the foregoing is true and
25
     correct.
26
         Executed on June 22, 2001.
27

28                                         _Paula R. Steward_
                                           PAULA R. STEWARD